UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

DANIEL M. WILSON,

        Petitioner,

        v.                                 Case No. 19-C-1016

GARY BOUGHTON,

        Respondent.

─────────────────────────────────────────────

**DECISION AND ORDER DENYING PETITION
FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

─────────────────────────────────────────────

Daniel M. Wilson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 16, 2019, challenging his state court conviction. On January 22, 2015, a Milwaukee County jury found Wilson guilty of repeated sexual assault of the same child in violation of Wis. Stat. § 948.025(1)(b), and on March 12, 2015, he was sentenced to 37 years of initial confinement and 13 years of extended supervision. Wilson asserts that there was insufficient evidence to support his conviction of repeated sexual assault of a child during the specified time period and that his trial counsel provided ineffective assistance. For the reasons that follow, the petition will be denied and the case dismissed.

**BACKGROUND**

In June 2014, Wilson was charged with repeated sexual assault of F.T., who was only eight years old at the time and was cognitively delayed. Wilson was the boyfriend of F.T.'s mother (J.Y.). The two had an on-and-off-again relationship, which had resumed in June 2013. When Wilson and J.Y. resumed their relationship, J.Y. and her children were living with J.Y.'s mother on Buffum Street in Milwaukee. Wilson consistently stayed overnight with the family at the

Buffum Street house. In November 2013, Wilson, J.Y., and her children moved into a house together on North 6th Street in Milwaukee.

On May 5, 2014, the Bureau of Milwaukee Child Welfare (BMCW) became involved with the family based on a suspicion of physical abuse occurring within the household. That suspicion arose out of a history of unexplained injuries to F.T. and her siblings. BMCW implemented a protective plan under which the children would remain at the North 6th Street home and J.Y.'s sister would act as the supervising adult. On May 13, 2014, BMCW discovered that J.Y.'s sister had failed to perform her supervisory duties required by the plan. As a result, and as part of BMCW's new plan, the family moved in with Wilson's mother, Armer Lloyd, at her home on North 28th Street in Milwaukee and Ms. Lloyd assumed the role of supervising adult. Dkt. No. 10-10 at 6–9.

Shortly after Ms. Lloyd became the supervising adult, school personnel discovered more bruising on F.T.'s arm. When asked how the injuries occurred, F.T. described an incident where her mother had hit her because she had broken a plate. However, authorities noted several other injuries and bruises on her arms that were more consistent with being struck more than once. As a result, on May 19, 2014, all of the children were removed from Ms. Lloyd's home. The children were then given full physical examinations for signs of other abuse and neglect as part of the standard procedure for children being placed in foster care. During F.T.'s examination, she was found to have painful lesions in her vaginal area, which had then spread to her anal area. At that point in the exam, F.T. began to cry and exclaimed that "someone did this to me." Further testing of the lesions revealed that F.T. had type 1 herpes.

Because a diagnosis of type 1 herpes in children can be indicative of sexual abuse, a forensic interview was conducted. During that interview, F.T. described multiple types of sexual contact and intercourse Wilson had with her. F.T. described the various assaults that took place at

her "granny's house" (J.Y.'s mother), at "[A.W.]'s granny's house" (Wilson's mother), and at her house (J.Y.'s house). Wilson was ultimately charged with repeated sexual assault of a child pursuant to Wis. Stat. § 948.025(1)(b). The statute requires that the State specify a time frame for the assaults, and the State alleged that the repeated sexual assaults took place from January 1, 2013, through May 5, 2014.

In January 2015, the case proceeded to trial. At the trial, the video recording of the interview of F.T. conducted by a forensic interviewer at the Child Protection Center for Children's Hospital of Wisconsin was played for the jury, and F.T. was called as a witness. Both in the video statement and, to a lesser extent, in her testimony, F.T. testified that she had been subjected to various forms of sexual abuse by Wilson, who she referred to as "Trey." In her video statement, F.T. described incidents where Wilson inserted his "private part" into her mouth and anus, and licked and inserted his finger into her vagina. She described in her own words how he had her masturbate him and ejaculated on her. F.T. also used anatomically correct dolls of a child and man to show the interviewer what "Trey" had done to her.

The State called as an expert witness Dr. Judy Guinn, who had personally examined F.T. During her testimony, the State introduced evidence of F.T.'s medical records from examinations that were performed after BMCW removed her from the house. The medical records indicated that F.T. had been diagnosed with type 1 herpes. Dr. Guinn testified as to having personally examined F.T. and the lesions. As a result of Dr. Guinn's observations and F.T.'s statements, Dr. Guinn had concluded that F.T. had been sexually abused. The State also introduced evidence that Wilson had tested positive for type 1 herpes.

Amanda Didier, the forensic examiner who interviewed F.T., also testified. Didier testified that, based on the 2,000 children she had interviewed throughout her career, "interfamilial sexual abuse" is the most common form of sexual abuse. Didier further testified to the fact that a

3

boyfriend of the victim's mother would be considered "interfamilial." Dr. Guinn's testimony also reaffirmed this idea, and her testimony was based on twenty-two years of experience in the field. Wilson also testified at trial and denied sexually abusing F.T. Wilson suggested that F.T. contracted the herpes through the sharing of towels or silverware. The jury ultimately found Wilson guilty of repeated sexual assault of the same child in violation of Wis. Stat. § 948.025(1)(b).

Wilson timely filed a postconviction motion seeking to vacate his conviction. He argued that the State had failed to prove that the assaults took place within the specified time frame. Wilson also alleged ineffective assistance of trial counsel. He also claimed that his attorney erred in failing to object to the admission of F.T.'s medical records. Wilson further argued that his attorney should have objected to the expert testimony of Dr. Guinn and Amanda Didier when they discussed the frequency with which child sexual assaults are committed by family members and that such abusers often threaten their victims. The trial court denied Wilson's motion as to each claim. The Wisconsin Court of Appeals affirmed the judgment of conviction and the trial court's denial of Wilson's postconviction motion. The Wisconsin Supreme Court denied Wilson's petition for review on July 10, 2018.

## ANALYSIS

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315 (2015). A federal court must entertain a claim by a state prisoner that he or she is being held in custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254.

A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite conclusion as the Supreme Court would have on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's decision is an unreasonable application of established precedent when that state court applies Supreme Court precedent in "an objectively unreasonable manner." *Id.* This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

### A. Preliminary Matter

As a preliminary matter, the court must first address Wilson's motion alleging that Respondent tampered with evidence. In his answer to Wilson's petition, Respondent failed to include a copy of the DVD of the forensic interview of F.T. that was marked as Trial Exhibit 3 and played to the jury during the trial. On July 29, 2020, the court directed Respondent to supplement the record with the trial exhibit. Dkt. No. 23. On August 28, 2020, counsel for Respondent advised the court that the video was no longer in the closed court file, but explained that he was in the process of obtaining a copy of the video interview from the Child Advocacy Center where the interview took place. Dkt. No. 24. A copy was obtained and filed on September 24, 2020. Dkt. No. 32. In the meantime, Wilson filed a motion alleging that a copy of the DVD was insufficient and that due to the possibility of tampering, his petition should be granted. Dkt. No. 27. Having viewed the DVD interview and based on counsel's representations that the DVD filed with the court is a copy of the original and the clear indicia of reliability, the court is satisfied that no

5

tampering occurred and that this evidence can be considered in assessing Wilson's petition for federal relief. His motion alleging tampering and for immediate granting of his petition is therefore denied.

**B. Insufficient Evidence**

Wilson argues that there was insufficient evidence to convict him of repeated sexual assault of a child because the State failed to present evidence to prove an essential element of the crime, namely, that the sexual assaults occurred during the specified time period—January 1, 2013, through May 5, 2014—as required under Wis. Stat. § 948.025(1)(b). Wilson notes that F.T. testified that the incidents of sexual abuse she described at trial occurred in "granny's house," by which he claims she meant "Anthony's granny," who was in fact Wilson's mother. Because the family did not move into Wilson's mother's house until after May 5, 2014, Wilson contends that the evidence fails to establish that he committed the offenses during the time alleged.

Challenges to the sufficiency of the evidence are an uphill battle in § 2254 cases. "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). This means "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

The Supreme Court has recognized that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). "[O]n habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court

6

disagrees with the state court. The federal court instead may do so *only* if the state court decision was 'objectively unreasonable.'" *Id.* (emphasis added) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). The Supreme Court has placed great emphasis on the fact that the federal courts must look to the state law for the substantive elements of a criminal offense. *Id.* at 655. The Court has observed that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319).

In this case, Wilson was convicted of the repeated sexual assault of the same child pursuant to Wis. Stat. § 948.025(1)(b). Section 948.025 requires that the defendant commit three or more acts of first-degree sexual assault of the same child within a specified time frame. Wis. Stat. § 948.025. Wilson's insufficient evidence claim is based on F.T.'s testimony that almost all of the sexual assaults took place at Ms. Lloyd's house, and that the family did not move into that residence until after the State's specified dates.

As the Wisconsin Court of Appeals pointed out, however, the exact dates on which the sexual assaults occurred are not required. *State v. Wilson*, 2018 WI App 28, ¶ 23, 381 Wis. 2d 472, 915 N.W.2d 456. Quoting the Wisconsin Supreme Court's decision in *State v. Fawcett*, the court explained:

> Sexual abuse and sexual assaults of children are difficult crimes to detect and prosecute. Often there are no witnesses except the victim. The child may have been assaulted by a trusted relative or friend and not know who to turn to for assistance and consolation. The child may have been threatened and told not to tell anyone. Even absent a threat, the child may harbor a natural reluctance to reveal information regarding the assault. These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory.

*Id.* (quoting *State v. Fawcett*, 145 Wis. 2d 244, 249, 426 N.W.2d 91 (Ct. App. 1988)). Because the sexual assault of a child involves a period of time and a pattern of conduct, and a singular date is not likely to stand out in a child's mind, prosecution of this crime can be difficult, and therefore,

7

it is "the *course* of sexually assaultive conduct that constitutes the primary element of this offense." *Id.* at ¶ 24 (quoting *State v. Johnson*, 2001 WI 52, ¶ 16, 243 Wis. 2d 365, 627 N.W.2d 455).

Even if precise dates were required, the evidence here was sufficient. While F.T. did testify that sexual assaults took place in a house where she did not live during the State's specified time frame, the jury also heard F.T.'s video statement in which she described incidents that had occurred at what she called their "new house," which the jury reasonably would have concluded was the house that the family moved into in November 2013 and lived in until they moved to the home of Ms. Lloyd in May 2014. This evidence, as well as F.T.'s apparent limitations in providing specific time and locations, was sufficient to support the jury's finding that at least three of the instances of sexual abuse occurred during the time alleged.

Moreover, in affirming Wilson's conviction, the Wisconsin Court of Appeals rightfully focused its attention on her overall evidence. F.T. testified about assaults that had taken place over a period of time prior to the discovery in May 2014 that F.T. had contracted type 1 herpes and had ulcerated lesions around the entrance to her vaginal area and the anal area. Dkt. No. 10-9 at 12–17. Dr. Guinn testified that it would normally take from two to fourteen days after exposure for symptoms to first appear. She noted that in her examination of F.T. on May 20, 2014, she observed five herpes lesions in the vaginal and anal area. Lesions, she explained, look like blisters and are called vestibules. They begin with a red papule and become a fluid-filled blister. Gradually, over a couple of weeks, they resolve and scab over. *Id.* at 5–6. Given this evidence, a jury could reasonably conclude that the sexual abuse began well before F.T. and her family moved to Ms. Lloyd's home. The totality of evidence, including F.T.'s young age and her cognitive difficulties, were all facts assessed by the jury. The court noted that the jury heard the graphic details of the different types of sexual assaults that F.T. encountered at different places and times, and that it

8

was entirely reasonable for the jury to conclude that at least three of those sexual assaults occurred during the time frame established by the State.

Ultimately, the Wisconsin Court of Appeals upheld the jury's verdict on this issue. Its decision does not constitute an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. While F.T. testified that the assaults took place at the home of Wilson's mother, her testimony described an ongoing series of assaults by Wilson that the jury could reasonably conclude occurred during more than the two-week period during which they lived at his mother's home. For all of these reasons, this court cannot say that the Wisconsin Court of Appeals unreasonably applied the clearly established law of *Jackson*. Because Wilson did not present clear and convincing evidence that the findings before this court are unreasonable, he is not entitled to federal habeas relief on his claim of insufficient evidence.

### C. Ineffective Assistance of Counsel

Wilson also argues that his trial counsel provided ineffective assistance by failing to object to (1) the admission of F.T.'s medical records on the grounds that they violated his right to confrontation and (2) specific testimony of Dr. Guinn and Amanda Didier. A claim of ineffective assistance of counsel is governed by law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88. If a defendant fails to satisfy one prong of the analysis, the court does not need to address the other. *Id.* at 687. The Supreme Court in *Strickland* emphasized that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

9

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Judicial scrutiny of counsel's performance under the standards that are created by *Strickland* and § 2254(d) is "highly deferential." *Harrington*, 562 U.S. at 88. Simply because trial counsel's motion was unsuccessful does not mean that it was ineffective. *See Strickland*, 466 U.S. at 699; *see also Brown v. Brown*, 847 F.3d 502, 514 (7th Cir. 2017) ("[A]n attorney's failure to prevail . . . does not show ineffective assistance."). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission from counsel was unreasonable." *Strickland*, 466 U.S. at 689 (1984). Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Wilson asserts that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of F.T.'s medical records on the grounds that they violated his right to confrontation. Wilson specifically argues that F.T.'s test results, which indicated that she had type 1 herpes, were testimonial because they were prepared for use in a criminal prosecution. The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that, with certain exceptions, the Confrontation Clause bars out-of-court statements that are "testimonial." *Crawford v. Washington*, 541 U.S. 36, 52 (2005). The Court has explained that a statement is "testimonial" if its "primary purpose" is to

10

"establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822–23 (2006).

The Wisconsin Court of Appeals held that F.T.'s medical records were not testimonial because they were not prepared for the primary purpose of Wilson's criminal prosecution. Instead, they were compiled during the course of regularly conducted activity by BMCW. A BMCW social worker testified that it is standard procedure for all children being placed in foster care to receive a complete medical evaluation by a doctor, and that when the lesions in F.T.'s vagina were discovered, they were tested for the purpose of determining proper treatment. The state court's determination was not an unreasonable application of clearly established federal law. *See United States v. Ellis*, 460 F.3d 920, 924–25 (7th Cir. 2006) (holding that medical records establishing presence of methamphetamine in defendant's system were nontestimonial business records, and thus admission of medical records did not violate defendant's right to confront witnesses).

In affirming Wilson's conviction, the Wisconsin Court of Appeals also noted that under Wisconsin law, patient health care records are not required to have an authenticating witness. In addition, the court observed that Wilson was afforded the opportunity to confront a witness regarding these medical records, as they were introduced into evidence during Dr. Guinn's testimony. Dr. Guinn referred to notes made by the sexual assault nurse examiner who had conducted F.T.'s initial genital exam that indicated F.T. cried out during the examination that "someone did this to me." Dr. Guinn testified that her conclusion that F.T. had been sexually assaulted was partially based on this statement. The Wisconsin Court of Appeals noted that Dr. Guinn had also examined F.T. and made the initial diagnosis and thus had personal knowledge of F.T.'s medical condition. It explained that, because Dr. Guinn was a testifying expert for the State, Wilson had the opportunity to confront and cross-examine her. The court concluded that Wilson's right of confrontation was not violated. The Wisconsin Court of Appeals' decision on this issue

11

does not represent an unreasonable application of federal law, and thus, Wilson's claim that his trial attorney was ineffective in failing to object must fail.

Wilson also asserts that his counsel provided ineffective assistance by failing to object to certain testimony of Dr. Guinn and Amanda Didier that was irrelevant and prejudicial. In particular, Dr. Guinn testified that the vast majority of child sexual abusers are relatives or acquaintances of the victims and that they often will threaten the victims to ensure their silence. Ms. Didier testified that, in most cases of child sexual assault, there is an interfamilial connection and that the boyfriend of a victim's mother would be considered interfamilial in that context. The Wisconsin Court of Appeals concluded that Wilson failed to satisfy either prong of the *Strickland* test. It explained:

> The criterion of relevancy is whether the evidence sought to be introduced would shed any light on the subject of inquiry." The relationship between Wilson and F.T. was certainly relevant to the issues being addressed at trial; thus, trial counsel was not deficient for failing to object. Furthermore, Wilson concedes that there was no evidence introduced that Wilson had ever threatened F.T. and, as such, Wilson fails to demonstrate how that particular statement was prejudicial to his case. Accordingly, because Wilson has failed to satisfy either prong of the *Strickland* test, this claim fails as well.

*Wilson*, 381 Wis. 2d 472, ¶ 37 (internal citations omitted). The Wisconsin Court of Appeals' decision with regard to this claim does not represent an unreasonable application of *Strickland* and was not contrary to any clearly established federal law. While the relevance of such evidence might be questionable, the state court's determination that, in light of the evidence against Wilson, it was not prejudicial is neither contrary to nor an unreasonable application of clearly established federal law. It thus follows that this claim fails as well. Accordingly, Wilson's petition must be denied.

12

## CONCLUSION

For the reasons above, Wilson is not entitled to federal habeas relief on any of his claims. His petition for writ of habeas corpus is therefore **DENIED**, and the clerk is directed to enter judgment dismissing the case. A certificate of appealability will be issued on the claims of insufficiency of the evidence and ineffective assistance of counsel. Although I conclude that Wilson is not entitled to habeas relief on these issues, it is possible that reasonable jurists would believe that Wilson has made a substantial showing of the denial of a constitutional right.

Wilson is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of September, 2020.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge